**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**MERCED IRRIGATION DISTRICT, on behalf of itself and all others similarly situated,**

              **Plaintiff,**

    **v.**

**BARCLAYS BANK PLC,**

              **Defendant.**

**No. 1:15-cv-04878-VM-GWG**

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, AUTHORIZATION TO DISSEMINATE CLASS NOTICE, APPOINTMENT OF CLASS COUNSEL, AND THE SCHEDULING OF A HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

I.     BACKGROUND ................................................................................ 1

II.    THE SETTLEMENT ................................................................... 5

III.   ARGUMENT ................................................................................ 6

       A.    The Settlement Satisfies the Requirements for Preliminary Approval ....... 6

              1.    The Settlement is the Result of Arms' Length Negotiations Conducted by Highly Experienced Counsel ................................... 7

              2.    The Settlement Falls Within the Range of Possible Approval ....... 8

       B.    The Court Should Certify a Settlement Class ........................................... 11

              1.    Rule 23(a) is Satisfied ................................................................. 12

                     a.    Numerosity.................................................................. 12

                     b.    Commonality.............................................................. 13

                     c.    Typicality .................................................................. 14

                     d.    Adequacy of Representation ........................................... 15

               2.    Rule 23(b)(3) is Satisfied .......................................................... 15

                     a.    Predominance.............................................................. 15

                     b.    Superiority.................................................................. 16

               3.    Cera LLP and Klafter Olsen & Lesser LLP Should Be Appointed Class Counsel ............................................................................. 17

       C.    The Manner and Form of Notice Satisfy Rule 23 .................................... 18

              1.    The Manner of Notice Satisfies Rule 23 ...................................... 18

               2.    The Form of Notice Satisfies Rule 23........................................... 19

i

D.      The Plan of Allocation is Fair and Reasonable, and It Should Be Preliminarily Approved ........................................................................ 20

IV.     PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................... 22

V.      CONCLUSION .................................................................................................... 23

## **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Amchem Prods. v. Windsor*
    521 U.S. 591 (1997) ............................................................................................ 13, 15, 16

*Bahena v. Park Ave. S. Mgmt. LLC*
    No. 15-CV-1507 (VSB), 2017 U.S. Dist. LEXIS 127192, (S.D.N.Y. Aug. 9, 2017) ........ 7

*Brecher v. Republic of Argentina*
    806 F.3d 22 (2d Cir. 2015) ....................................................................................... 12

*Charron v. Pinnacle Grp. NY LLC*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................................................................... 11

*Cohen v. J.P. Morgan Chase & Co.*
    262 F.R.D. 153 (E.D.N.Y. 2009) .............................................................................. 12

*Consol. Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995) ....................................................................................... 13

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*
    502 F.3d 91 (2d Cir. 2007) ....................................................................................... 16

*Detroit v. Grinnell Corp.*
    495 F.2d 448 (2d Cir. 1974) ....................................................................................... 7

*Dial Corp. v. News Corp.*
    314 F.R.D. 108 (S.D.N.Y. 2015) ......................................................................... 13, 16

*Eisen v. Carlisle & Jacquelin*
    417 U.S. 156 (1974) ................................................................................................. 18

*FERC v. Barclays Bank PLC*
    247 F. Supp. 3d 1118 (E.D. Cal. 2017) ...................................................................... 3

*Gilliam v. Addicts Rehab. Ctr. Fund*
    No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. March 24, 2008) ..... 11

*Goldberger v. Integrated Res., Inc.*
    209 F.3d 43 (2d Cir. 2000) ........................................................................................ 7

*In re Credit Default Swaps Antitrust Litig.*
    No. 13md2476 (DLC), 2016 U.S. Dist. LEXIS 54587 (S.D.N.Y. Apr. 25, 2016) ..... 18, 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*
    No. MDL No. 12-18, 2015 U.S. Dist. LEXIS 152668 (S.D.N.Y. Nov. 9, 2015) ............. 20

*In re Giant Interactive Grp., Inc. Sec. Litig.*
    279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................... 20

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
    No. 11 MDL 2262 (NRB), 2016 U.S. Dist. LEXIS 175929 (S.D.N.Y. Dec. 20, 2016) ..... 9

*In re Livent Noteholders Sec. Litig.*
  210 F.R.D. 512 (S.D.N.Y. 2002) .................................................................. 15

*In re Marsh ERISA Litig.*
  265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................. 20

*In re MF Global Holdings Ltd. Inv. Litig.*
  310 F.R.D. 230 (S.D.N.Y. 2015) .................................................................. 12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*
  176 F.R.D. 99 (S.D.N.Y. 1997) ................................................................. 6, 8

*In re PaineWebber Ltd. P'ships Litig.*
  147 F.3d 132 (2d Cir. 1998) .......................................................................... 6

*In re PaineWebber Ltd. P'ships Litig.*
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 8, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..................................................... 10, 11

*In re U.S. Foodservice Inc. Pricing Litig.*
  729 F.3d 108 (2d Cir. 2013) ........................................................................ 16

*Kaplan v. S.A.C. Capital Advisors, L.P*
  311 F.R.D. 373 (S.D.N.Y. 2015) ........................................................ 13, 14, 15

*McIntire v. China MediaExpress Holdings, Inc.*
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) ............................................................ 13

*Merced Irrigation Dist. v. Barclays Bank PLC*
  165 F. Supp. 3d 122 (S.D.N.Y. 2016) ............................................................ 2

*Merced Irrigation Dist. v. Barclays Bank PLC*
  178 F. Supp. 3d 181 (S.D.N.Y. 2016) ............................................................ 3

*Merced Irrigation Dist. v. Barclays Bank PLC*
220 F. Supp. 3d 412 (S.D.N.Y. 2016) ............................................................. 2

*Moreno v. Deutsche Bank Ams. Holding Corp.*
  2017 U.S. Dist. LEXIS 143208 (S.D.N.Y. Sep. 5, 2017) ............................... 14

*Newman v. Stein*
  464 F.2d 689 (2d Cir. 1972) ...................................................................... 8, 9

*Park v. Thomson Corp.*
  No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) ........ 10

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*
  237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................... 8

*Robidoux v. Celani*
  987 F.2d 931 (2d Cir. 1993) ........................................................................ 13

*Silver v. 31 Great Jones Rest.*
  No. 11 CV 7442 (KMW)(DCF), 2013 U.S. Dist. LEXIS 7821 (S.D.N.Y. Jan. 3, 2013) ... 7

iv

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*
No. 1:15-cv-00871 (SHS), 2017 U.S. Dist. LEXIS 156425 (S.D.N.Y. Sep. 25, 2017) ..... 9

*Strougo v. Bassini*
258 F. Supp. 2d 254 (S.D.N.Y. 2003)............................................................................. 10

*Torres v. Pet Extreme*
No. 1:13-cv-01778-LJO-SAB, 2015 U.S. Dist. LEXIS 5136 (E.D. Cal. Jan. 14, 2015).. 18

*Tsereteli v. Residential Asset Securitization Trust 2006-A8*
283 F.R.D. 199 (S.D.N.Y. 2012) .................................................................................... 14

*Velez v. Novartis Pharm. Corp.*
No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010) .... 12

*Wal–Mart Stores, Inc. v. Dukes*
131 S. Ct. 2541 (2011)................................................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
396 F.3d 96 (2d Cir. 2005) ................................................................................... *passim*

*Xuechen Yang v. Focus Media Holding Ltd.*
No. 11cv9051 (CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).................... 20

**Rules, Statutes and Other Regulations**

15 U.S.C. § 1 ..................................................................................................................... 1

15 U.S.C. § 15................................................................................................................... 22

Fed. R. Civ. 23 ......................................................................................................... *passim*

Fed. R. Civ. 30(b)(6)........................................................................................................... 3

## PRELIMINARY STATEMENT

Plaintiff Merced Irrigation District ("Merced" or "Plaintiff") submits this memorandum in support of its motion for entry of an Order preliminarily approving a proposed settlement ("Settlement") of this class action, certifying a settlement class, authorizing dissemination of the Notice of Proposed Class Action Settlement With Barclays Bank PLC and Hearing on Settlement Approval ("Notice"), appointing Cera LLP and Klafter Olsen & Lesser LLP as class counsel; and scheduling a hearing for final approval of Settlement.  The Settlement provides for Defendant Barclays Bank PLC ("Barclays" or "Defendant") to pay $29 million in cash to settle this class action and is set forth in a Settlement Agreement, dated April 12, 2018.[1]  This Settlement is the product of almost three years of hard-fought litigation, a multi-day mediation with nationally renowned neutral Kenneth R. Feinberg, Esq., and several weeks of work on the settlement documentation.  For the reasons stated herein, the proposed settlement warrants preliminary approval and the proposed Preliminary Approval Order submitted herewith should be entered.

## I.      BACKGROUND

Plaintiff filed this complex and unusual case on June 23, 2015 after more than a year of investigation and analysis.  Dkt. No. 1.  The Complaint asserts, *inter alia*, class action claims under Sections 1 and 2 of the Sherman Antitrust Act.  15 U.S.C. §§ 1, 2.  The Complaint alleges an anticompetitive scheme through which Defendant Barclays manipulated the daily index prices for electricity published by the Intercontinental Exchange ("ICE") and Dow Jones Corp. ("Dow

---

[1] The Settlement Agreement is attached as Exhibit A to the Joint Declaration of Solomon B. Cera and Jeffrey A. Klafter in Support of Plaintiff's Motion for Preliminary Approval of Proposed Settlement, Certification of a Settlement Class, Authorization to Disseminate Class Notice, Appointment of Class Counsel, and the Scheduling of a Hearing for Final Approval of Proposed Settlement ("Joint Prelim. Approval Decl.").

Jones") for peak and off-peak power at four Western electricity hubs—Mid-Columbia, Palo Verde, South Path 15 or North Path 15 (collectively, "Daily Index Prices") — during the period between November 1, 2006 and December 31, 2008.  Plaintiff alleges that the scheme at issue had three parts.[2]

*First*, Plaintiff alleges that Barclays would enter into large fixed-for-floating financial swap contracts whose return was dependent on the Daily Index Prices.  Complaint, ¶¶2, 55. *Second*, Plaintiff alleges that Barclays would take large positions in electricity futures contracts in the opposite direction of its net swap contract positions.  *Id.* ¶55.  *Third*, Plaintiff alleges that Barclays would "flatten" its futures position by executing a large volume of money losing daily contracts. *Id.*  ¶¶45, 56, 57.  This flattening would artificially drive the Daily Index Prices in the direction that would benefit Barclays' swap contracts.  *Id.* ¶59.  Thus, Barclays leveraged its swap positions by artificially moving the Daily Index Prices during the swap contract period in the direction that would maximize its own profit.  *Id.* ¶2.

On September 8, 2015, Barclays moved to dismiss the Complaint.  Dkt. No. 13.  The Court granted the motion in part and denied it in part.  *Merced Irrigation Dist. v. Barclays Bank PLC* ("*Merced I*"), 165 F. Supp. 3d 122 (S.D.N.Y. 2016).  Specifically, the Court held that Plaintiff had adequately pled a claim for monopolization under Section 2, but dismissed Plaintiff's Section 1 claim and claim for unjust enrichment.  *Id.* at 132-43.[3]  The Court denied Barclays' subsequent motions for reconsideration and for judgment on the pleadings.  *Merced Irrigation Dist. v. Barclays Bank PLC* ("*Merced III*"), 220 F. Supp. 3d 412 (S.D.N.Y. 2016);

---

[2] Barclays has denied all allegations of wrongdoing on its part.

[3] The Court also held that Plaintiff stated a claim for relief under California's Unfair Competition Law.  *Id.* at 143-46.

*Merced Irrigation Dist. v. Barclays Bank PLC* ("*Merced II*"), 178 F. Supp. 3d 181 (S.D.N.Y. 2016).

Before filing this action, Plaintiff's counsel engaged in an extensive investigation of Barclays' conduct with respect to the four Western electricity hubs at issue that included an analysis of the Federal Energy Regulatory Commission ("FERC") Enforcement Staff Report and Recommendations concerning Barclays.  Joint Prelim Approval Decl. ¶ 2.  During the discovery phase, Plaintiff propounded extensive document requests on Barclays and reviewed the documents Barclays produced in response as well as the Administrative Record compiled and made public by FERC.  *Id.* ¶ 3.[4]  Plaintiff also served subpoenas on ICE and Dow Jones, as well as various brokers who executed purchases and sales of contracts which settled against the Daily Index Prices at issue.  *Id.* ¶ 4.  Plaintiff also subpoenaed FERC for additional information, including the position data it obtained from twenty-five participants in the four Western hubs at issue during the relevant period.  *Id.* ¶ 5.

Plaintiff deposed the four former Barclays traders who it alleges were directly responsible for orchestrating the manipulative scheme at issue as well as three other fact witnesses formerly employed by Barclays and a Rule 30(b)(6) Barclays designee.  *Id.* ¶ 6.  Barclays conducted a detailed Rule 30(b)(6) deposition of Merced and it deposed two fact witnesses with knowledge

---

[4] FERC ordered Barclays to pay a civil penalty of $435 million and disgorge $34.9 million of unjust profits, plus interest. *Barclays Bank PLC,* 144 FERC ¶ 61,041 at ¶8.  After Barclays refused the pay these amounts, FERC commenced an action, on October 9, 2013, in the United States District Court for the Eastern District of California, *FERC v. Barclays Bank PLC*, No. 2:13-cv-2093-TLN-DAD (E.D. Cal.), to have that court compel Barclays to pay these amounts. That court, however, determined that Barclays was entitled to *de novo* review of FERC's conclusions.  *FERC v. Barclays Bank PLC*, 247 F. Supp. 3d 1118 (E.D. Cal. 2017).  Shortly thereafter, on October 30, 2017, FERC's Office of Enforcement entered into a Stipulation and Consent Agreement resolving its enforcement action against Barclays composed of a civil penalty of $70 million and disgorgement in the amount of $35 million.

3

of Merced's electricity trading and positions.  *Id.*  Barclays also deposed Merced's electricity

advisor, The Energy Authority.  *Id.*

Barclays produced more than 450,000 documents containing in excess of 1.1 million

pages that included the FERC Administrative Record, all of which required extensive analysis.

*Id.*  ¶ 7.  In addition, in response to Barclays' document requests to Merced, Plaintiff's counsel

were required to review and analyze more than 63,000 potentially responsive documents for

production.  *Id.*  Ultimately, Merced produced 28,712 pages of documents.  *Id.*  Contained within

Merced's production were more than 1,000 Excel spreadsheets produced in native format that

would have generated many thousands of additional pages if they had been printed.  *Id.*

The parties also engaged in extensive expert discovery.  In support of Plaintiff's motion

for class certification, filed February 7, 2017, (Dkt. 47-50), Plaintiff proffered the expert report

of Jeffrey J. Leitzinger, Ph.D.  Dr. Leitzinger concluded that

> the impact of Barclays alleged monopolization on the Daily Index Prices can be
> shown through an econometric pricing model designed to reveal price movements
> during periods of alleged manipulation that could not otherwise be attributed to
> the normal forces of market supply and demand.

Expert Report of Jeffrey J. Leitzinger, Ph.D. ("Leitzinger Report") ¶ 6, Dkt. No. 49-1.  Dr.

Leitzinger developed an econometric pricing model and used it to quantify the degree to which

Barclays artificially moved the market up or down during the relevant times at the relevant hubs

and concerning the relevant products.  In connection with its response to Plaintiff's motion for

class certification, filed May 25, 2017, Barclays deposed Dr. Leitzinger and tendered its own

expert report by James Levinsohn, Ph.D.  Dkt. Nos. 71, 72-1.  Barclays also simultaneously filed

a motion to strike Dr. Leitzinger's report on *Daubert* grounds (Dkt. Nos. 68-69) which Plaintiff

opposed.  Dkt. No. 78.  Both Dr. Leitzinger and Dr. Levinsohn tendered rebuttal reports.  Dkt.

Nos. 81-1 and 84.  Both experts were also deposed.

After fact discovery was completed and both motions were fully briefed, the parties agreed to mediate this case with the nationally recognized neutral Kenneth R. Feinberg, Esq. Joint Prelim. Approval Decl. ¶ 13. The mediation took place over the course of two days on October 17 and 18, 2017. *Id.* ¶ 14. As a result of further discussions, the parties agreed to resolve the case for $29 million, subject to approval of the Court. *Id.* ¶ 16.

## II.    THE SETTLEMENT

The Settlement Agreement includes the following material terms: Barclays will pay into escrow a settlement amount of $29 million in cash within ten business days of entry of an order preliminarily approving the settlement. Settlement Agreement ¶¶ 17, 32. Settlement Class members will provide Barclays with a release, in essence, of all claims that have been alleged or could have been alleged in the Action arising out of the conduct alleged in the Action. *Id.* ¶ 28. Notice of the Settlement, in a form approved by the Court, will be disseminated by direct mail to those Settlement Class members who have been identified by reasonable means. *Id.* ¶ 26. In addition, a Publication Notice, in a form approved by the Court, will be published one time in the national edition of the *Wall Street Journal* and in *Energy Central*, (or in substitute publications if publication in these periodicals is impracticable). *Id.* The Notice and Publication Notice to which the parties have agreed are attached as Exhibits B and C to the Joint Prelim. Approval Decl. The Notice describes the right of Settlement Class members to opt-out and the manner in which an opt-out request must be made. The Notice also advises Settlement Class members that in order to receive a payment from the Settlement, they must submit a valid and timely Proof of Claim. The Proof of Claim to which the parties have agreed is attached as Exhibit D to the Joint Prelim. Approval Declaration. The Notice also includes Plaintiff's proposed Plan of Allocation, which is addressed in Section III.D, below. Plaintiff seeks preliminary Court approval of both notices and the Proof of Claim as well as the Plan of Allocation.

5

III.   **ARGUMENT**

    A.   **The Settlement Satisfies the Requirements for Preliminary Approval**

    The Federal Rules of Civil Procedure require court approval for class action settlements. Fed. R. Civ. P. 23(e).  There is a "strong judicial policy in favor of settlements, particularly in the class action context."  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116-17 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).  The Second Circuit recognizes that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *Id.* (quoting Manual for Complex Litigation, Third, § 30.42 (1995)).

    The approval process for class actions takes place in two steps.  During the initial, "preliminary approval" step, "courts make a preliminary evaluation of the fairness of the settlement, prior to notice."  *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*").  "Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *Id.*

    Preliminary approval of a proposed settlement is granted so long as the settlement is arrived at through a fair process and the terms of the settlement are within the "range of *possible* approval."  *Id.* at 102 (emphasis added).  In conducting this inquiry, a court determines whether the settlement is "at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard."  *Id.* (citations omitted).  "Preliminary approval is typically granted 'where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of possible approval.'" *Bahena v. Park Ave. S. Mgmt. LLC*, No. 15-CV-1507 (VSB), 2017 U.S. Dist. LEXIS 127192, at *3-4 (S.D.N.Y. Aug. 9, 2017) (quoting *Silver v. 31 Great Jones Rest.*, No. 11 CV 7442 (KMW)(DCF), 2013 U.S. Dist. LEXIS 7821, at *5 (S.D.N.Y. Jan. 3, 2013)).

The Settlement here should be preliminarily approved because it is the product of arms' length negotiations and falls within the range of possible approval.[5]

### 1.    The Settlement is the Result of Arms' Length Negotiations Conducted by Highly Experienced Counsel

To determine whether the settlement is procedurally fair, courts consider the negotiations between the parties. *See Wal-Mart Stores, Inc.*, 396 F.3d at 116.  Here, there can be no question that the negotiations were conducted at arm's length.  The parties only agreed to resolve the case after an extensive two-day mediation with Kenneth R. Feinberg, Esq., one of the country's most respected and sought-after neutrals.  The use of a mediator like Mr. Feinberg, "well-versed" in antitrust law, "rais[es] a presumption that the settlement achieved meets the requirements of due process." *Id.*  Further, the negotiations were conducted by highly qualified counsel who sought to obtain the best possible result for their respective clients. *See* the firm biographies of

---

[5] At the final fairness hearing, Plaintiff will demonstrate that this settlement is a "fair, reasonable and adequate" settlement of the class claims. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  There are nine relevant *Grinnell* factors that courts consider in evaluating a settlement's substantive terms at the time of final approval: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial;(7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  Given that a number of these factors were designed for application at the final approval stage, they are discussed herein only when they provide a useful guide to assess the settlement's fairness at this preliminary approval stage.

Plaintiff's lead counsel, attached as Exhibits D and E to the Declaration of Solomon B. Cera in

Support of Plaintiff's Motion for Class Certification and for Appointment of Class Counsel

("Cera Class Cert. Decl."), Dkt. Nos. 49-4 & 49-5.  Plaintiff's counsel were fully informed as to

the strengths and weaknesses of the claims at issue given the extensive motion practice and

discovery in which they had engaged as well as through the mediation process.  Joint Prelim.

Approval Decl. ¶ 15.  Accordingly, a presumption of fairness attaches to the Settlement.  *See*

*NASDAQ II*, 187 F.R.D. at 474 ("So long as the integrity of the arms' length negotiation process

is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement.").

Further, when the settlement that results from such negotiations is being championed by

experienced and informed counsel, courts afford counsel's opinion considerable weight because

they are closest to the facts and risks associated with the litigation itself.  *In re PaineWebber*

*Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) (stating that "great weight" is accorded

to the recommendations of counsel, who are most closely acquainted with the facts of the

underlying litigation).

### 2.     The Settlement Falls Within the Range of Possible Approval

"[P]reliminary  approval  is appropriate  where a proposed settlement is merely within

the range of possible approval."  *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D.

26, 34 (E.D.N.Y. 2006); *NASDAQ II*, 176 F.R.D. at 102.  The range of reasonableness must be

assessed in connection with the risks and uncertainties of prevailing in the action.  "There is a

range of reasonableness with respect to a settlement—a range which recognizes the uncertainties

of law and fact in any particular case and the concomitant risks and costs necessarily inherent in

taking any litigation to completion . . . ."  *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (quoting

*Newman  v. Stein*, 464  F.2d  689,  693  (2d  Cir.  1972)).  "[T]he judge will not be reversed if

the appellate court concludes that the settlement lies within that range." *Id.* (quoting *Newman v. Stein*, 464 F.2d at 693).

The Settlement here is an all cash settlement in the amount of $29 million. Plaintiff estimated the harm caused by Barclays' alleged manipulative conduct to potentially be between $100 million and $200 million. Calculating damages in this case is a particularly complex matter given the nature of the transactions at issue. In addition, the cases have held that in considering antitrust damages, any benefits of an antitrust manipulation violation received by members of the class must be taken into account, which thereby reduces recoverable damages.[6] Barclays' expert opined that Plaintiff lacked a valid damages methodology and that recoverable damages were minimal, if any. A recovery for class members absent settlement would of course depend on Plaintiff prevailing on its motion for class certification, defeating Barclays' motion to strike Plaintiff's expert report, surviving a motion for summary judgment by Barclays, and prevailing at trial and on appeal, all of which presented very significant uncertainties, and which would likely take years.

Specifically, absent the Settlement, the Court would have to decide Barclays' *Daubert* motion, as well as Plaintiff's motion for class certification. If Plaintiff was to prevail on its motion for class certification, Barclays likely would seek interlocutory review of that decision pursuant to Federal Rule of Civil Procedure 23(f). Even a decision by the Second Circuit as to

---

[6] *See Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, No. 1:15-cv-00871 (SHS), 2017 U.S. Dist. LEXIS 156425, at *72 (S.D.N.Y. Sep. 25, 2017) (Swiss franc LIBOR case; "if some of the plaintiffs happen to benefit from the manipulation as to certain transactions, that amount could be netted against the losses, further reducing the possibility of damages disproportionate to the defendants' benefit."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 U.S. Dist. LEXIS 175929, at *51 (S.D.N.Y. Dec. 20, 2016) ("As to the second argument, we agree that plaintiffs may ultimately recover only to the extent of their net injury, given that plaintiffs may well have benefited from LIBOR suppression in the same transaction or in a different transaction.").

whether to take the appeal could take months.  If the Court accepted the appeal, a decision could take more than one year.  *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 212 n.13 (E.D.N.Y. 2013) ("In the Wal-Mart case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").  Barclays raised some formidable arguments in opposition to class certification.  And though Plaintiff believes Dr. Leitzinger easily exceeds the low *Daubert* threshold, Plaintiff recognizes that Barclays' *Daubert* motion offers a vigorous challenge to Dr. Leitzinger's opinions.  If the Court were to grant Barclays' motion to strike, Plaintiff would likely be unable to prove damages or certify a class.  Of course, if Plaintiff's motion for class certification were denied, the case would not proceed on a class basis.  Additional litigation risks would arise from Barclays' likely summary judgment motion.

Further, a trial would involve extremely complex factual and damages issues concerning the trading and hedging of electricity contracts that may be difficult for a jury to understand, and which would unquestionably be very expensive.  It is also difficult to predict how jurors would respond to the complicated statistical and econometric analyses provided by each side's expert in this case.  *See Park v. Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 U.S. Dist. LEXIS 84551, at *9 (S.D.N.Y. Oct. 22, 2008) ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . .  A trial on these issues would likely be confusing to a jury.").

If Plaintiff prevailed at trial on behalf of the class, there would likely be post-trial motions, as well as an appeal of the judgment.  In short, had the parties not resolved the case, litigation could have continued, potentially for years, with no guaranteed success for Plaintiff.  *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("The potential for this

litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class.") (internal quotations and citations omitted).

In stark contrast to these risks and uncertainties and the prospect of lengthy proceedings, the Settlement here presents a current and certain recovery for the class. "'In assessing the Settlement, the Court should balance the benefits afforded the Class, including the ***immediacy*** and ***certainty*** of a recovery, against the continuing risks of litigation.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d at 212 (emphasis in the original); *Charron v. Pinnacle Grp. NY LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *13 (S.D.N.Y. March 24, 2008)) (A settlement is reasonable when it "assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road . . . .'").

Based on the foregoing, the Settlement is well within the <u>possible</u> range of approval as a "fair, reasonable and adequate" settlement of the Settlement Class' claims.

### B.     The Court Should Certify a Settlement Class

By the Settlement Agreement, the parties have stipulated that the Court should certify the following class for purposes of settlement:

> Any individual or entity that held any contract which settled against the ICE or Dow Jones published daily index prices for peak or off-peak power at either Mid-Columbia, Palo Verde, South Path 15 or North Path 15 between November 1, 2006 to December 31, 2008, and was damaged by movements in such index prices allegedly caused by Barclays (the "Settlement Class").

This Settlement Class does not include Barclays or any present or former parent, subsidiary, affiliate, agent or employee of Barclays.  Settlement Agreement ¶ A.17.

Federal Rule of Civil Procedure 23(e) permits courts to certify classes for settlement purposes.  Fed. R. Civ. P. 23(e).  A settlement class needs to satisfy the requirements of Rule 23(a) and Rule 23(b).  "[W]hen considering certification in the context of a proposed settlement, 'courts must take a liberal rather than a restrictive approach.'"  *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945, at \*24-25 (S.D.N.Y. Nov. 30, 2010) (quoting *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009)).  "In other words, many of the restrictions or considerations that come into play in the standard certification analysis do not receive the same treatment at the settlement stage."  *Id.*  Plaintiff has already briefed the issue of class certification, and it incorporates that briefing by reference here. *See* Plaintiff's Memorandum In Support of Motion for Class Certification and for Appointment of Class Counsel ("Class Cert. Br."), Dkt. No. 48; Plaintiff's Reply Memorandum In Support of Motion for Class Certification and for Appointment of Class Counsel ("Class Cert. Reply"), Dkt. No. 80.  Below, Plaintiff summarizes why it is appropriate to certify the stipulated class for settlement purposes.

### 1.      Rule 23(a) is Satisfied

Rule 23(a) has four requirements: numerosity, typicality, commonality, and adequacy of representation.  Fed. R. Civ. P. 23(a)(1) – (4).  Rule 23 also includes an implied requirement of ascertainability.  *See Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015).  These requirements are easily satisfied here.

### a.      Numerosity

The first Rule 23(a) requirement is numerosity.  Fed. R. Civ. P. 23(a)(1).  "Numerosity is presumed when a class consists of forty or more members." *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47

F.3d 473, 483 (2d Cir. 1995)).  A plaintiff also "need not provide evidence of an exact class size to establish numerosity." *Id.* (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)). Plaintiff previously identified approximately 70 Settlement Class members.  Class Cert. Br. at 10 (citing Declaration of Jeffrey A. Klafter in Support of Motion for Class Certification and for Appointment of Class Counsel ¶ 2, Dkt. No. 50).  Given the size of the relevant market, it is clear that there are additional market participants, and members of that group are expected to identify themselves following the publication of notice.  Accordingly, numerosity is satisfied.

### b.   Commonality

Rule 23(a) also requires Plaintiffs to establish commonality.  Commonality requires only "a common contention . . . [that is] of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  Commonality is a "low hurdle." *Kaplan v. S.A.C. Capital Advisors, L.P*, 311 F.R.D. 373, 378 (S.D.N.Y. 2015) (quoting *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014)).  Indeed, the "'commonality requirement is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement' of predominance." *Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)).

The key issues in this case are issues common to the Settlement Class members as they concern a common alleged manipulative scheme by Barclays over the entire period at issue. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Moreno v. Deutsche Bank Ams. Holding*

13

*Corp.*, 2017 U.S. Dist. LEXIS 143208, at *11-12 (S.D.N.Y. Sep. 5, 2017) (internal quotations and citation omitted).  That is the case here.  *See* Class Cert. Br. at 11.

Another common question is the extent to which Barclays manipulated the relevant ICE and Dow Jones indices.  Class Cert. Br. at 12.  As shown by Dr. Leitzinger, the impact of Barclays' alleged manipulative conduct on all Settlement Class members can be established through well-established statistical and econometric methods.  *See id.* at 12.  Accordingly, commonality is satisfied.

### c.      Typicality

Another requirement of Rule 23(a) is typicality.  Fed. R. Civ. P. 23(a)(3).  Typicality requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Kaplan*, 311 F.R.D. at 378–79.  This requirement is "not demanding."  *Id.* at 379 (quoting *Tsereteli v. Residential Asset Securitization Trust 2006-A8*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012)).  Typicality requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class."  *Kaplan*, 311 F.R.D. at 379 (internal citations and quotation marks omitted).  Typicality is satisfied here because the named Plaintiff and the Settlement Class members were all harmed by Barclays' anticompetitive conduct in the same market.  Class Cert. Br. at 13.  That market is the market for the setting of the Daily Index Prices at issue.  Since Merced and the Settlement Class members each held electricity contracts based on Daily Index Prices at issue, Merced is typical of the Class.  *See* Class Cert. Reply at 3.  Accordingly, typicality is satisfied.

### d.      Adequacy of Representation

The final requirement of Rule 23(a) is adequacy of representation.  Fed. R. Civ. P.

23(a)(4).  "To meet this requirement, the lead plaintiff's counsel must be 'qualified, experienced,

and generally able to conduct the proposed litigation,' and the class representative must not have

interests conflicting with the class." *Kaplan*, 311 F.R.D. at 379 (quoting *In re Livent Noteholders*

*Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002)).  Here, the interests of the class representative,

Merced, are aligned with the interests of the Settlement Class members because both Merced and

the Settlement Class members were allegedly harmed by the same conduct in the same market.

Class Cert. Br. at 13, Class Cert. Reply at 7-9.  Moreover, Plaintiff's counsel are experienced

litigators of complex cases and antitrust cases, in particular.  *See* Exhibits D and E to the Cera

Class Cert. Declaration.  Accordingly, adequacy of representation is satisfied, and Merced should

be appointed class representative.

As all of the individual Rule 23(a) factors are satisfied, Rule 23(a) is satisfied.

### 2.      Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires that "questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."

These factors, commonly referred to as "predominance" and "superiority," are satisfied here.

Class Cert. Br. at 14-21; Class Cert. Reply at 11-12.

### a.      Predominance

In *Amchem*, the Supreme Court stated that Rule 23(b)(3)'s predominance requirement

tests "whether proposed classes are sufficiently cohesive to warrant adjudication by

representation."  *Amchem Prods. v. Windsor,* 521 U.S. at 623.  The Second Circuit finds

predominance where the "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [where] these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal citations omitted). Predominance is "readily met in certain cases alleging . . . violations of the antitrust laws." Class Cert. Br. at 14 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007)). This is due, in large part, to the fact that the "legal question raised by the antitrust injury element . . . is common to the class." *Id.* Where "the factual question—injury-in-fact—is also common, then the predominance requirement of Rule 23(b)(3) is likely met." *Id.*

Predominance is satisfied because Plaintiff can use common evidence to prove each element of its Section 2 claim, as well as antitrust injury, damages, and fraudulent concealment. The analysis is set out in Plaintiff's class certification briefing. *See* Class Cert. Br. at 15-20; Class Cert. Reply at 11-12.

> **b.    Superiority**

Rule 23(b)(3) class actions must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Class treatment is superior to any alternative procedure for resolving the issues in this case because it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about undesirable results." Class Cert. Br. at 21 (quoting *Amchem Prods. v. Windsor*, 521 U.S. at 615). Class treatment is also superior based on the possibility that some Settlement Class members' recoveries could be less

than litigation costs, and because aggregate litigation serves judicial efficiency. *See Dial Corp.*, 314 F.R.D. at 121. Accordingly, superiority is satisfied.

In sum, the requirements of Rules 23(a) and 23(b)(3) are satisfied. It follows that the Court should certify the Settlement Class for settlement purposes.

### 3. Cera LLP and Klafter Olsen & Lesser LLP Should Be Appointed Class Counsel

Finally, the Court should appoint Cera LLP and Klafter Olsen & Lesser LLP as class counsel under Rule 23(g)(1).[7] In making the appointment, the Court must consider: (1) counsel's work in identifying and investigating the plaintiff's claims; (2) their experience in handling class actions and other relevant litigation; (3) their knowledge of the applicable law; and (4) the resources they will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv). As discussed in Plaintiff's motion for class certification at page 21, Cera LLP and Klafter Olsen & Lesser LLP, together with co-counsel, initiated this action. The firms have committed years of work and paid significant out-of-pocket sums to support the prosecution of this case. There have been no other related class or individual actions filed to counsel's knowledge arising out of the facts at issue. Additionally, Cera LLP and Klafter Olsen & Lesser LLP have extensive experience litigating complex class actions, including antitrust class actions. *See* Exhibits D and E to the Cera Class Cert. Declaration. Therefore, these firms should be appointed Class Counsel.

---

[7] Also representing Plaintiff and the class are the Law Office of Daniel J. Sponseller and Cairncross & Hempelman, two firms with particular expertise in energy related markets.

C.      **The Manner and Form of Notice Satisfy Rule 23**

1.      **The Manner of Notice Satisfies Rule 23**

If the Court grants preliminary approval, it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice plan set forth in the Settlement Agreement calls for notice to be sent by direct mail to those Settlement Class members that can be identified by reasonable means.  Settlement Agreement ¶ 26; *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974) (recognizing that direct mail is "best notice practicable" where names and addresses of class members are "easily ascertainable").  Plaintiff will also provide notice by publication in the national edition of the *Wall Street Journal* and in *Energy Central* (or in substitute publications if publication in these periodicals is impracticable).  Settlement Agreement ¶ 26; *see also Torres v. Pet Extreme*, No. 1:13-cv-01778-LJO-SAB, 2015 U.S. Dist. LEXIS 5136, at *10 (E.D. Cal. Jan. 14, 2015) ("Notice by publication has been found to be adequate where identification of individual class members is not possible through reasonable effort.").

Notice plans that include direct mailings and publication notice are frequently approved in class action cases.  *See, e.g.*, *Wal-Mart Stores, Inc.*, 396 F.3d at 105 (affirming preliminary and final approval of settlement with a "notice plan that required mailing the settlement notice to class members and publishing a condensed version of the settlement notice in numerous widely-distributed publications"); *see also In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 U.S. Dist. LEXIS 54587, at *17 (S.D.N.Y. Apr. 25, 2016) ("Class Counsel mailed notice packets to each of 13,923 identified Class members. . . . The Summary Notice was also

18

published on January 11 in several important business publications. . . .").  Accordingly, Plaintiff respectfully requests that the Court approve the plan for dissemination of notice.

### 2.    The Form of Notice Satisfies Rule 23

Rule 23(c)(2)(B) requires a notice to "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc.*, 396 F.3d at 113-14.  "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings."  *Id.* at 114 (internal quotations and citations omitted).

Together, the proposed form of Notice, Proof of Claim and Publication Notice, attached as Exhibits B, C and D to the Joint Preliminary Approval Declaration, are written in plain, easily understandable language, and satisfies each of the requirements listed in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Plaintiff respectfully requests that the Court preliminarily approve the form of the Notice, Proof of Claim and Publication Notice.

### D.    The Plan of Allocation is Fair and Reasonable, and It Should Be Preliminarily Approved

The Notice also sets forth Plaintiff's proposed Plan of Allocation to govern the distribution of settlement proceeds to Settlement Class members who submit a timely and valid Proof of Claim.  "A principal goal of a plan of [allocation] must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund." *In re Credit Default Swaps Antitrust Litig.*, 2016 U.S. Dist. LEXIS 54587, at *28. While approval of a plan of allocation is a discretionary decision for the court, *In re PaineWebber Ltd. P's hips Litig.*, 171 F.R.D. at 132, approval will issue if a plan is "fair and adequate."  *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL No. 12-18, 2015 U.S. Dist. LEXIS 152668, at *18 (S.D.N.Y. Nov. 9, 2015) (internal quotations and citations omitted). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (internal quotations and citations omitted); *accord Xuechen Yang v. Focus Media Holding Ltd.*, No. 11cv9051 (CM)(GWG), 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The Plan of Allocation proposed by Plaintiff is fair, adequate, and reasonable.  It was developed by Plaintiff's counsel, who are highly experienced, able class action practitioners, in consultation with Plaintiff's expert.  It reflects the principle, typically incorporated in a plan of allocation, that damages should be determined on a net basis taking into account all benefits obtained by a claimant from the anticompetitive conduct at issue.  *See* note 5, above.  It also allows a claimant to recover even if they, after reasonable diligence, are unable to provide all data showing their benefitting holdings during a Product Manipulation Period, by reducing the

amount of damaged holdings by 90 percent to reflect customary hedging practices by market participants.  A summary of the proposed Plan of Allocation is as follows.

Each Settlement Class member who submits a valid and timely Proof of Claim will be entitled to a *pro rata* share of the Net Settlement Fund based on the extent to which they were damaged by Barclays' alleged manipulation.

The allocation plan begins by dividing the periods of alleged manipulation into periods of upward manipulation and downward manipulation.  In periods of alleged *upward* manipulation, market participants were injured by contracts for the purchase of physical electricity and under financial contracts requiring them to make payments that were based on a Daily Index price and benefitted under contracts for the sale of physical electricity and under financial contracts entitling them to receive payments that were based on a Daily Index Price.  In the periods of *downward* manipulation, market participants were injured under contracts for the sale of physical electricity and under financial contracts entitling them to receive payments that were based on a Daily Index price and benefitted under contracts for the purchase of physical electricity and under financial contracts requiring them to make payments that were based on a Daily Index Price.

For each Product Manipulation Period, a claimant's Injured Volumes are summed, and so are its Benefitted Volumes.  A net harm figure for each Product Manipulation Period is calculated by subtracting the Benefitted Volumes from the Injured Volumes.  This figure is then multiplied by the amount of manipulation (in dollars) per unit volume, which Dr. Leitzinger calculated in his Report.  In addition, as noted above, to the extent that a claimant cannot provide all benefitted holdings during a Product Manipulation Period, its injured holdings during that Product Manipulation Period will be reduced by 90 percent.

21

This process is then repeated for all Product Manipulation Periods.  The results for each Product Manipulation Period are then summed.  If this amount is zero or negative, the claimant did not sustain damage on a net basis and will not be able to share in the Settlement proceeds.

Once each Eligible Claim Amount is calculated, claimants with a positive Eligible Claim Amount will receive a payment equal to the Eligible Claim Amount times the Net Settlement Fund divided by the Total Eligible Claims.  In other words, each claimant will get a *pro rata* share of the Net Settlement Fund.  No claimant will receive more than three times its positive Eligible Claim Amount.  This multiplier is consistent with the Sherman Act's treble damages provision, 15 U.S.C. § 15(a).  Any amount remaining in the Net Settlement Fund, after all of the above distributions, will be distributed to a 501(c) charitable organization to be identified by Plaintiff, and as approved by the Court.  Plaintiff's counsel submit that the proposed Plan of Allocation should be preliminarily approved as fair, reasonable, and rational.

## IV.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

If the Court preliminarily approves the Settlement, Plaintiff respectfully proposes the following schedule for Settlement events:

| Event | Proposed Timing |
|---|---|
| Mail Notice to Issue | Thirty days after the Court grants preliminary approval |
| Publication Notice to Issue | Thirty days after the Court grants preliminary approval |
| Settlement Website to Become Active | Thirty days after the Court grants preliminary approval |
| Deadline to Object | Twenty days before the Fairness Hearing |
| Deadline to Opt-Out | Forty-five days after notice issues |
| Deadline to Submit Claim Forms | One hundred twenty days after notice issues |
| Final Approval and Fee Briefs | Thirty days in advance of the Fairness Hearing |
| Fairness Hearing | 90 days after the dissemination of notice |

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should preliminarily approve the Settlement, certify

the Settlement Class, appoint Cera LLP and Klafter Olsen & Lesser LLP as class counsel,

preliminarily approve the form of notice and the notice dissemination plan, and the plan of

allocation.

Dated:  April 13, 2018                        Respectfully submitted,

/s/ Jeffrey A. Klafter                        /s/ Solomon B. Cera
Jeffrey A. Klafter                            Solomon B. Cera
Michael H. Reed                               Pamela A. Markert
**KLAFTER OLSEN & LESSER LLP**                Louis A. Kessler
2 International Drive, Suite 350              **CERA LLP**
Rye Brook, NY 10573                           595 Market Street, Suite 2300
Telephone: (914) 934-9200                     San Francisco, CA 94105
                                              Telephone: (415) 777-2230

                                              C. Andrew Dirksen
                                              **CERA LLP**
                                              800 Boylston St., 16th Floor
                                              Boston, MA 02199
                                              Telephone: (857) 453-6555

*Attorneys for Plaintiff and the Proposed Class*

Daniel Sponseller                             Eric Christensen
**LAW OFFICE OF DANIEL J.**                   **CAIRNCROSS & HEMPELMAN**
**SPONSELLER**                                524 Second Ave., Suite 500
409 Broad Street, Suite 200                   Seattle, WA 98104-2323
Sewickley, PA 15143                           Telephone: (206) 254-4451
Telephone: (412) 741-4422

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 13, 2018, a true and correct copy of the foregoing was served electronically. Notice of this filing will be sent by operation of the Court's CM/ECF system to all parties shown on the electronic filing receipt.

/s/ Solomon B. Cera
Solomon B. Cera