**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

|  |  |  |
|---|---|---|
| **MERCED IRRIGATION DISTRICT, on behalf of itself and all others similarly situated,** | : : : : | |
| **Plaintiff,** | : | **No. 1:15-cv-04878-VM-GWG** |
| **v.** | : : | |
| **BARCLAYS BANK PLC,** | : : | |
| **Defendant.** | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, AND APPROVAL OF THE PLAN OF ALLOCATION**

## TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ................................................................................................. 1

I.     BACKGROUND ......................................................................................................... 1

II.    ARGUMENT ............................................................................................................. 2

     A.    The Settlement Is Fair, Reasonable, and Adequate, and It Should Be Approved .. 2

          1.    The Settlement is Procedurally Fair ............................................................ 2

          2.    The Settlement is Substantively Fair .......................................................... 3

              a.    The complexity, expense and likely duration of the litigation and the reaction of the class to the settlement ....................................... 4

              b.    The stage of the proceedings and the amount of discovery completed ................................................................................... 5

              c.    The risks of establishing liability, damages, and maintaining the class action through trial .................................................... 6

              d.    The ability of the defendant to withstand a greater judgment ........ 8

              e.    The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation ....... 8

     B.    Class Notice Satisfied Due Process and Federal Rule of Civil Procedure 23 ........ 9

     C.    The Court Should Confirm Its Preliminary Certification of a Settlement Class .. 10

          1.    The Settlement Class Satisfies Rule 23(a) ................................................ 11

          2.    The Settlement Class Satisfies Rule 23(b)(3) ........................................... 12

     D.    The Plan of Allocation Is Fair, Reasonable, and Adequate, and Should Be Approved ................................................................................................ 14

III.    CONCLUSION ......................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) ................................................................................................ 13

*Arbuthnot v. Pierson*
607 F. App'x. 73 (2d Cir. 2015) ............................................................................ 4

*Charron v. Pinnacle Grp. N.Y. LLC*
874 F. Supp. 2d 179 (S.D.N.Y. 2012) .................................................................. 5

*Charron v. Wiener*
731 F.3d 241 (2d Cir. 2013) .................................................................................. 5

*City of Detroit v. Grinnell Corp.*
495 F.2d 448 (2d Cir. 1974) .......................................................................... 2, 3, 8

*City of Providence v. Aeropostale, Inc.*
No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ............. 4, 6

*Comcast Corp. v. Behrend*
569 U.S. 27 (2013) .................................................................................................. 7

*Consolidated Rail Corp. v. Town of Hyde Park*
47 F.3d 473 (2d Cir. 1995) .................................................................................... 11

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*
502 F.3d 91 (2d Cir. 2007) .................................................................................... 13

*Frank v. Eastman Kodak Co.*
228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................... 7

*Gilliam v. Addicts Rehab. Ctr. Fund*
No. 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) ............................ 5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*
No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .... 6

*In re Corrugated Container Antitrust Litig.*
659 F.2d 1322 (5th Cir. 1981) .............................................................................. 8

*In re Credit Default Swaps Antitrust Litig.*
No. 13MD2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) ............................ 14

*In re Facebook, Inc.*
674 F. App'x 37 (2d Cir. 2016) ............................................................................ 14

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*
MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ................................... 14

*In re Giant Interactive Grp., Inc. Sec. Litig.*
279 F.R.D. 151 (S.D.N.Y. 2011) .......................................................................... 14

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
No. 11 MDL 2262 (NRB), 2016 WL 7378980 (S.D.N.Y. Dec. 20, 2016)........................ 9

*In re Livent, Inc. Noteholders Sec. Litig.*
210 F.R.D. 512 (S.D.N.Y. 2002) ................................................................. 12

*In re Marsh ERISA Litig.*
265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................. 14

*In re MF Global Holdings Ltd. Inv. Litig.*
310 F.R.D. 230 (S.D.N.Y. 2015) ................................................................. 11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*
187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 7

*In re PaineWebber Inc. Ltd. P'ships Litig.*
117 F.3d 721 (2d Cir. 1997)........................................................................ 2

*In re PaineWebber Ltd. P'ships Litig.*
171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 2, 14

*In re Painewebber Ltd. P'shipss Litig.*
147 F.3d 132 (2d Cir. 1998)........................................................................ 2

*In re U.S. Foodservice Inc. Pricing Litig.*
729 F.3d 108 (2d Cir. 2013)...................................................................... 13

*In re Vitamin C Antitrust Litig.*
No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) ................. 8

*In re Warner Commc'ns Sec. Litig.*
618 F. Supp. 735, 744–45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35 (2d Cir. 1986) ................ 7

*Kaplan v. S.A.C. Capital Advisors, L.P*
311 F.R.D. 373 (S.D.N.Y. 2015) ........................................................... 11, 12

*Merced Irrigation Dist. v. Barclays Bank PLC*
220 F. Supp. 3d 412 (S.D.N.Y. 2016).......................................................... 6

*Merced Irrigation Dist. v. Barclays Bank PLC,*
165 F. Supp. 3d 122 (S.D.N.Y. 2016).......................................................... 6

*Newman v. Stein*
464 F.2d 689 (2d Cir. 1972)........................................................................ 8

*Park v. The Thomson Corp.*
No. 05 Civ. 2931 (WHP), 2008 WL 4684232 (S.D.N.Y. Oct. 22, 2008)...................... 4, 7

*Polar Int'l Brokerage Corp. v. Reeve*
187 F.R.D. 108 (S.D.N.Y. 1999) ................................................................. 5

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*
277 F. Supp. 3d 521 (S.D.N.Y. 2017).......................................................... 9

*Virgin Atl. Airways Ltd. v. British Airways PLC*
257 F.3d 256 (2d Cir. 2001)........................................................................ 4

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ................................................................................... 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005) .................................................................. *passim*

*Weseley v. Spear, Leeds & Kellogg*
  711 F. Supp. 713 (E.D.N.Y. 1989) .............................................................. 4

*Yang v. Focus Media Holding Ltd.*
  No. 11 Civ. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................... 14

**Federal Statutes**

15 U.S.C. § 15(a) ....................................................................................... 16

15 U.S.C. § 2 ............................................................................................. 13

**Federal Rules**

Federal Rule of Civil Procedure

  Rule 23 ............................................................................................. 9, 10

  Rule 23(a) ............................................................................... 10, 11, 12, 13

  Rule 23(a)(1)-(4) ............................................................................... 11

  Rule 23(b)(3) ........................................................................... 10, 12, 13

  Rule 23(b)(3)(D) ............................................................................... 13

  Rule 23(g) ......................................................................................... 12

**PRELIMINARY STATEMENT**

The Court preliminarily approved a $29 million class action settlement in this case, it has preliminarily granted certification of a settlement class for settlement purposes, and it has preliminarily approved the Plan of Allocation.  Preliminary Approval Order, ECF No. 90.  The Court should now make these preliminary orders final.

As the Court is aware, this hard-fought, highly complex multi-year litigation settled following a multi-day mediation with Kenneth R. Feinberg, Esq., one of the country's top mediators, and subsequent work on settlement documentation that took months.  In accordance with the Court's Preliminary Approval Order, notice of the settlement has been disseminated to Class Members.  To date, there have been no objections and no requests for exclusion.  For the reasons stated herein and in prior briefing, the Court should enter an order granting final approval of the Settlement, confirming its certification of the Settlement Class for settlement purposes, and granting final approval of the Plan of Allocation.  A proposed form of Order and Final Judgment will be submitted prior to the final approval hearing.

**I.      BACKGROUND**

The history of this case, including details about the case investigation and pleadings, motion practice, merits discovery, expert discovery, mediation, and the Settlement and Notice procedures, is set forth in the Joint Declaration of Solomon B. Cera and Jeffrey A. Klafter in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and For an Incentive Award to the Named Plaintiff ("Joint Decl."), filed herewith.  That discussion is incorporated herein by reference.

## II.     ARGUMENT

### A.     The Settlement Is Fair, Reasonable, and Adequate, and It Should Be Approved

As Plaintiff explained in its Motion for Preliminary Approval, there is a "strong judicial policy in favor of settlements, particularly in the class action context."  Preliminary Approval Motion at 6 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re Painewebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998))).  The resolution reached by the parties in this case is a "fair, reasonable and adequate" settlement of the class claims.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Because it meets the requirements for both procedural and substantive fairness, the settlement should be finally approved.  *Wal-Mart Stores, Inc.*, 396 F.3d at 116-117.

### 1.     The Settlement is Procedurally Fair

The Settlement is procedurally fair.  "A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement."  *Wal-Mart Stores, Inc.*, 396 F.3d at 116.  Arm's length negotiation by experienced counsel weighs heavily in the analysis.  Indeed, "[s]o long as the integrity of the arm's length negotiation process is preserved, . . . a strong initial presumption of fairness attaches to the proposed settlement, . . . and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd sub nom. In re PaineWebber Inc. Ltd. P'ships Litig.*, 117 F.3d 721 (2d Cir. 1997) (internal quotations and citations omitted).  There can be no dispute that the Settlement satisfies the procedural fairness test.

In granting preliminary approval, the Court found that the "Settlement Agreement was entered into at arm's length by highly experienced counsel."  Preliminary Approval Order ¶2; *see also* the firm resumes of Plaintiff's Counsel, attached as Exhibits G and H to the Joint Decl.  That experienced counsel engaged in arm's length negotiations is made clear from the extensive and hard-fought nature of the settlement negotiations.  In particular, the Settlement was only reached through a process that included a two-day, in-person mediation with one of the country's most respected and sought-after neutrals, Kenneth R. Feinberg, Esq.  As noted in prior briefing, the use of a mediator like Mr. Feinberg, "well-versed" in antitrust law, "rais[es] a 'presumption' that the settlement achieved meets the requirements of due process."  Preliminary Approval Motion at 7 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116).  Accordingly, the Court should find that the Settlement is procedurally fair.

## 2.     The Settlement is Substantively Fair

The Settlement is substantively fair under the factors the Second Circuit provides must be considered in the final approval analysis.  Those factors are:  (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Grinnell*, 495 F.2d at 463.

a.   **The complexity, expense and likely duration of the litigation and the reaction of the class to the settlement**

It is well-known that "[f]ederal antitrust cases are complicated, lengthy, and bitterly fought." *Wal-Mart Stores, Inc.*, 396 F.3d at 118; *see also Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (referring to the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (stating that antitrust class actions "are notoriously complex, protracted, and bitterly fought").

This years-long monopolization case is a case in point. *See* Joint Decl. ¶¶12-44. If it were to proceed, the Court would need to rule on a motion for class certification, as well as a *Daubert* motion directed at a sophisticated econometric analysis. Barclays would certainly move for summary judgment and would likely appeal any adverse class certification ruling on an interlocutory basis. If a class trial were to take place, the trial would be extremely costly and uncertain to the class, as would any post-trial briefing and appellate practice. The appeals process alone could take more than one year. *See, e.g.*, *Park v. The Thomson Corp.*, No. 05 Civ. 2931 (WHP), 2008 WL 4684232, at *3 (S.D.N.Y. Oct. 22, 2008) (emphasizing the complexity of antitrust actions and noting that this section two matter "involved prolonged fact and expert discovery" and was "now in its fourth year"). In sum, the case could continue for years with a highly uncertain result if it had not been settled.

It is in both sides' interest to achieve a certain, final resolution now. *See City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014), *aff'd sub. nom. Arbuthnot v. Pierson*, 607 F. App'x. 73 (2d Cir. 2015) ("It would be costly and time-consuming to pursue this litigation all the way through trial, with no guarantee of success. Even if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for

years."); *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012), *aff'd sub nom. Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013) (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008)) (A settlement is reasonable when it "assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road . . . .'").

Finally, no class member has taken the position that it makes sense to forgo the Settlement and risk an uncertain recovery, which conceivably might be as low as zero. *See* Joint Decl. ¶¶10, 49, 51-53, 55-59. There are no requests for exclusion, and no objections have to date been lodged.[1] *Wal-Mart Stores, Inc.*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citation and internal quotations omitted). Accordingly, the first and second *Grinnell* factors weigh in favor of final approval.

> **b.      The stage of the proceedings and the amount of discovery completed**

At issue in this factor is whether the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 114 (S.D.N.Y. 1999) (citation and internal quotations omitted). This litigation is far advanced. Fact discovery has been concluded. *See* Joint Decl. ¶22-37. It involved written and deposition discovery, including the production by Barclays of roughly one million pages. *Id.* ¶¶24-37. The parties took extensive expert discovery. *Id.* ¶¶38-39. Plaintiff tendered the expert report and rebuttal report of Jeffrey J. Leitzinger, Ph.D, and Barclays tendered

---

[1]      The objection deadline is August 25, 2018.

the expert report of Dr. James Levinsohn. Both experts were deposed. With discovery complete, the parties "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, No. 02 Civ. 5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Accordingly, the third *Grinnell* factor weighs in favor of final approval.

### c.   The risks of establishing liability, damages, and maintaining the class action through trial

"In assessing the Settlement, the Court should balance the benefits afforded to the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *City of Providence*, 2014 WL 1883494, at *7. While Plaintiff is confident in its position, it recognizes risks associated with establishing liability, impact and damages, and of maintaining a class action through trial. *See* Joint Decl. ¶¶51-53. With respect to liability, Barclays has taken the position that Plaintiff has not stated a claim under the relevant antitrust law. This Court has rejected that position. *Merced Irrigation Dist. v. Barclays Bank PLC*, 220 F. Supp. 3d 412, 419 (S.D.N.Y. 2016); *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 147 (S.D.N.Y. 2016), *reconsideration denied,* 178 F. Supp. 3d 181, 184 (S.D.N.Y. 2016). However, Barclays would almost certainly raise its position with the Second Circuit in the event of an adverse verdict. Moreover, Plaintiff seeks to establish liability and damages primarily through the expert reports of Dr. Leitzinger. Barclays moved under *Daubert* to preclude Dr. Letizinger from testifying in this case. ECF No. 69. While Plaintiff is confident that Dr. Leitzinger's analysis more than satisfies *Daubert*, it is recognized that Barclays has raised extensive arguments in its papers. If the *Daubert* challenge were successful, Plaintiff would face additional substantial obstacles to success. Regardless of whether the *Daubert* motion succeeded, Barclays has indicated

that it would file extensive motions for summary judgment on liability and damages seeking to dismiss the case before trial.

Even if Barclays' *Daubert* challenge failed, it is difficult to predict how a jury would respond to Dr. Leitzinger's sophisticated econometric model. *See Park*, 2008 WL 4684232, at *4 ("The complexity of Plaintiff's claims *ipso facto* creates uncertainty . . . . A trial on these issues would likely be confusing to a jury."). The jury could side with Barclays' expert. *See In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744–45 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35, 38 (2d Cir. 1986) ("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad non-actionable factors . . . ."). A jury could accept Dr. Leitzinger's conclusions. Or it could agree with Dr. Leitzinger and find liability, but disagree with him concerning the amount of damages. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 476 (S.D.N.Y. 1998) ("[T]he history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

As for class certification, that, too, presents a risk for Plaintiff. While Plaintiff disagrees with the arguments in Barclays' opposition to class certification, it recognizes that the arguments are not completely frivolous. And, as noted, if this Court were to certify a class, the Second Circuit could potentially disagree, either on an interlocutory basis or following trial. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013) (reversing class certification

in antitrust case).  Accordingly, the fourth, fifth, and sixth *Grinnell* factors weigh in favor of final approval.

### d.      The ability of the defendant to withstand a greater judgment

While Barclays could likely withstand a greater judgment, that fact bears little weight in the analysis.  As one court noted, "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and, against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *6 (E.D.N.Y. Oct. 23, 2012) (internal quotations and citation omitted).  The certainty and immediacy of a settlement weighs in favor of final approval of the settlement.  *See* Joint Decl. ¶54. Accordingly, the seventh *Grinnell* factor weighs in favor of final approval.

### e.      The range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation

"'[T]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . .'"  *Wal-Mart Stores, Inc.*, 396 F.3d at 119 (quoting *Newman v. Stein*,  464 F.2d 689, 693 (2d Cir. 1972)).  "'[T]he judge will not be reversed if the appellate court concludes that the settlement lies within that range.'"  *Id.* (quoting *Newman*, 464 F.2d at 693).  In one antitrust case, the Fifth Circuit explained that "the essence of a settlement is compromise.  A just result is often no more than an arbitrary point between competing notions of reasonableness."  *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981); *see also Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single

percent of the potential recovery.").   The Settlement is reasonable in light of the best possible recovery and the risks of litigation.

As discussed above, Plaintiff's litigation risk extends to liability, damages, and class certification.   Plaintiff maintains that in light of the risks, the $29 million settlement is a strong result.   *See* Joint Decl. ¶¶55-59.   Plaintiff estimated the harm caused by Barclays' alleged manipulative conduct to be between $100 million and $200 million in single damages.   However, it is recognized that calculating damages in this case is a particularly complex matter given the nature of the transactions at issue.   In addition, cases have held that in considering antitrust damages, any benefits of an antitrust manipulation violation received by members of the class must be taken into account, thereby reducing recoverable damages.[2]   Barclays' expert opined that Plaintiff lacked a valid damages methodology and that recoverable damages were minimal, if any. Accordingly, the eighth and ninth *Grinnell* factors weigh in favor of final approval.

As the *Grinnell* factors strongly weigh in favor of final approval, the Settlement should be finally approved.

### B.      Class Notice Satisfied Due Process and Federal Rule of Civil Procedure 23

As discussed in Plaintiff's Motion for Preliminary Approval, the notice plan set forth in the Settlement Agreement satisfies the requirements of due process and Federal Rule of Civil Procedure 23.   Preliminary Approval Motion at 19-20.   In its Preliminary Approval Order, the

---

[2]      *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 560 (S.D.N.Y. 2017) (Swiss franc LIBOR case; "if some of the plaintiffs happened to benefit from the manipulation as to certain transactions, that amount could be netted against the losses, further reducing the possibility of damages disproportionate to defendants' benefit."); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 (NRB), 2016 WL 7378980, at *18 (S.D.N.Y. Dec. 20, 2016) ("As to the second argument, we agree that plaintiffs may ultimately recover only to the extent of their net injury, given that plaintiffs may well have benefited from LIBOR suppression in the same transaction or in a different transaction.").

Court approved Plaintiff's plan for Notice.  Preliminary Approval Order ¶¶7-12.  As set forth in the accompanying Declaration of Marc Wall Regarding Dissemination of Notice to Settlement Class Members and Requests for Exclusion ("Wall Decl."), Plaintiff has complied with the Court's directives concerning notice.  The Notice and Proof of Claim were timely mailed to all known potential Class Members.  Wall Decl. ¶12.  Notice was published in the *Wall Street Journal* and *Energy Central*, as ordered.  *Id.* at ¶¶5-7.

### C.    The Court Should Confirm Its Preliminary Certification of a Settlement Class

The Settlement Class preliminarily certified by the Court is defined as follows:

> Any individual or entity that held any contract which settled against the ICE or Dow Jones published daily index prices for peak or off-peak power at either Mid-Columbia, Palo Verde, South Path 15 or North Path 15 between November 1, 2006 and December 31, 2008, and was damaged by movements in such index prices allegedly caused by Barclays. Excluded from the Settlement Class are Barclays and any present or former parent, subsidiary, affiliate, agent or employee of Barclays.

Preliminary Approval Order ¶3.  The Court preliminarily certified the Settlement Class under Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b)(3).  For the reasons set forth in Plaintiff's prior briefing and summarized below, Rule 23 is satisfied.[3] Accordingly, the Court should grant final certification of the Settlement Class for settlement purposes.

---

[3]    *See* Plaintiff's Memorandum In Support of Motion for Class Certification and for Appointment of Class Counsel ("Class Cert. Br."), ECF No. 48; Plaintiff's Reply Memorandum In Support of Motion for Class Certification and for Appointment of Class Counsel ("Class Cert. Reply"), ECF No. 80; Plaintiff's Motion for Preliminary Approval ("Preliminary Approval Motion"), ECF No. 88.   This briefing is incorporated herein by reference.

### 1.      The Settlement Class Satisfies Rule 23(a)

Federal Rule of Civil Procedure 23(a) imposes four requirements for the certification of a class: numerosity, commonality, typicality, and adequacy of representation.   Fed. R. Civ. P. 23(a)(1)-(4).  All four requirements are satisfied here.

*First*, numerosity is satisfied.  "'[N]umerosity is presumed when a class consists of 40 or more members.'"  *In re MF Global Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 235 (S.D.N.Y. 2015) (citing *Consolidated. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).  There is no dispute that numerosity is present here.  *See* Class Cert. Br. at 10 (citing Declaration of Jeffrey A. Klafter in Support of Motion for Class Certification and for Appointment of Class Counsel ¶2, ECF No. 50) (identifying 70 entities that fall within the class definition).

*Second*, commonality is satisfied.  Commonality requires only a "common contention . . . [that is] of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Common questions here include: whether Barclays engaged in an alleged manipulative scheme and the extent to which Barclays' alleged scheme manipulated and monopolized the relevant ICE and Dow Jones indices. *See* Class Cert. Br. at 11-12.  The econometric model presented by Plaintiff's expert, Dr. Jeffrey J. Leitzinger, Ph.D., provides a common method for answering these questions.  *See* Class Cert. Br. at 10-12.

*Third*, typicality is satisfied.  Typicality requires that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Kaplan v. S.A.C. Capital Advisors, L.P*, 311 F.R.D. 373, 378–79 (S.D.N.Y. 2015) (Marrero, J.) (internal quotation and citation omitted).  That is the case here.

Merced and the Settlement Class Members all held electricity-related contracts based on Daily Index Prices at issue, and they were all harmed by the same anticompetitive scheme in the market for the setting of the Daily Index Prices. *See* Class Cert. Br. at 12-13; Class Cert. Reply at 3, 13.

*Fourth*, adequacy of representation is satisfied. "To meet this requirement, the lead plaintiff's counsel must be 'qualified, experienced, and generally able to conduct the proposed litigation,' and the class representative must not have interests conflicting with the class." *Kaplan*, 311 F.R.D. at 379 (quoting *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517 (S.D.N.Y. 2002)). Merced and the Settlement Class Members' interests are aligned because they were all allegedly harmed by the same scheme in the same market. *See* Class Cert. Br. at 13, Class Cert. Reply at 7-9. Further, Plaintiff's counsel are experienced litigators of complex class action cases including antitrust cases. The Court has previously appointed them as Settlement Class Counsel. *See* Exhibits G and H to the Joint Decl.; *see also* Preliminary Approval Order ¶5 (determining that requirements of Federal Rule of Civil Procedure 23(g) were satisfied, and appointing Solomon B. Cera and Jeffrey A. Klafter as Settlement Class Counsel).

As all of the individual Rule 23(a) factors are satisfied, Rule 23(a) is satisfied.

## 2. The Settlement Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Courts refer to these requirements as predominance and superiority. *See* Class Cert. Br. at 14-21; Class Cert. Reply at 11-12.

Predominance is measured by "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623

(1997). There is predominance where the "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [where] these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (internal quotations and citations omitted). Predominance is "readily met in certain cases alleging . . . violations of the antitrust laws." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 108 (2d Cir. 2007) (internal quotations and citation omitted)). This is due, in large part, to the fact that the "legal question raised by the antitrust injury element . . . is common to the class." *Id.* Where "the factual question—injury-in-fact—is also common, then the predominance requirement of Rule 23(b)(3) is likely met." *Id.* Predominance is satisfied here because the analysis described in Plaintiff's class certification briefing shows that Plaintiff can use common evidence to prove each element of its Sherman Act Section 2 claim, as well as antitrust injury, damages, and fraudulent concealment. *See* Class Cert. Br. at 15-20; Class Cert. Reply at 11-12.

Further, certification of the Class for settlement purposes is the superior method for resolving the claims of Plaintiff and the Settlement Class Members. Without the settlement class device, Barclays could not obtain a class-wide release, and therefore would have had little, if any, incentive to agree to the Settlement. Moreover, certification of the class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner. *See, Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.")

Because Rule 23(a) and Rule 23(b)(3) are both satisfied, the Court should grant final certification of the Settlement Class for settlement purposes.

**D.** **The Plan of Allocation Is Fair, Reasonable, and Adequate, and Should Be Approved**

Finally, the Court should approve the Plan of Allocation.  The Plan of Allocation was included in the Notice.  As of the date of this submission, no Settlement Class Member has raised any issue with the Plan of Allocation.  Plaintiff previously described the Plan of Allocation in its Motion for Preliminary Approval at pages 20-23.  For ease of reference, Plaintiff reproduces that discussion here.

The Notice sets forth Plaintiff's proposed Plan of Allocation to govern the distribution of settlement proceeds to Settlement Class members who submit a timely and valid Proof of Claim. "A principal goal of a plan of [allocation] must be the equitable and timely distribution of a settlement fund without burdening the process in a way that will unduly waste the fund."  *In re Credit Default Swaps Antitrust Litig.*, No. 13MD2476 (DLC), 2016 WL 2731524, at *9 (S.D.N.Y. Apr. 26, 2016).  While approval of a plan of allocation is a discretionary decision for the court, *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 132-133 (citations omitted), approval will issue if a plan is "fair and adequate."  *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *7 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (internal quotations and citations omitted).  "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel."  *Id.* (internal quotations and citations omitted); *accord Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051 (CM) (GWG), 2014 WL 4401280, at *9 (S.D.N.Y. Sept. 4, 2014); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 163 (S.D.N.Y. 2011); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010).

The Plan of Allocation proposed by Plaintiff is fair, adequate, and reasonable.  It was developed by Plaintiff's counsel, who are highly experienced, able antitrust class action

practitioners, in consultation with Plaintiff's expert.  It reflects the principle, typically incorporated in a plan of allocation, that damages should be determined on a net basis taking into account all benefits obtained by a claimant from the anticompetitive conduct at issue.  *See* Motion for Preliminary Approval at 9 n.6.  It also allows a claimant to recover even if they, after reasonable diligence, are unable to provide all data showing their benefitting holdings during a Product Manipulation Period, by reducing the amount of damaged holdings by 90 percent to reflect customary hedging practices by market participants.   A summary of the proposed Plan of Allocation is as follows.

Each Settlement Class member who submits a valid and timely Proof of Claim will be entitled to a *pro rata* share of the Net Settlement Fund based on the extent to which they were damaged by Barclays' alleged manipulation.

The allocation plan begins by dividing the periods of alleged manipulation into periods of upward manipulation and downward manipulation.  In periods of alleged *upward* manipulation, market participants were injured by contracts for the purchase of physical electricity and under financial contracts requiring them to make payments that were based on a Daily Index price and benefitted under contracts for the sale of physical electricity and under financial contracts entitling them to receive payments that were based on a Daily Index Price.   In the periods of alleged *downward* manipulation, market participants were injured under contracts for the sale of physical electricity and under financial contracts entitling them to receive payments that were based on a Daily Index Price and benefitted under contracts for the purchase of physical electricity and under financial contracts requiring them to make payments that were based on a Daily Index Price.

For each Product Manipulation Period, a claimant's Injured Volumes are summed, as are its Benefitted Volumes.  A net harm figure for each Product Manipulation Period is calculated by

subtracting the Benefitted Volumes from the Injured Volumes.  This figure is then multiplied by the amount of manipulation (in dollars) per unit volume, which Dr. Leitzinger calculated.  In addition, as noted above, to the extent that a claimant cannot provide all benefitted holdings during a Product Manipulation Period, its injured holdings during that Product Manipulation Period will be reduced by 90 percent.

This process is then repeated for all Product Manipulation Periods. The results for each Product Manipulation Period are then summed. If this amount is zero or negative, the claimant did not sustain damage on a net basis and will not be able to share in the Settlement proceeds.

Once each Eligible Claim Amount is calculated, claimants with a positive Eligible Claim Amount will receive a payment equal to the Eligible Claim Amount times the Net Settlement Fund divided by the Total Eligible Claims.  In other words, each claimant will get a *pro rata* share of the Net Settlement Fund.  No claimant will receive more than three times its positive Eligible Claim Amount.  This multiplier is consistent with the Sherman Act's treble damages provision, 15 U.S.C. § 15(a).  Any amount remaining in the Net Settlement Fund, after all of the above distributions, will be distributed to a Section 501(c)(3) charitable organization to be identified by Plaintiff, and as approved by the Court.  Plaintiff's counsel submit that the proposed Plan of Allocation should be finally approved as fair, reasonable, and rational.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court confirm its certification of the Settlement Class for settlement purposes; that the Court grant final approval of the Settlement; and that the Court approve Plaintiff's proposed Plan of Allocation.

Dated: August 15, 2018                                    Respectfully submitted,


_____                    _____
Jeffrey A. Klafter                                              Solomon B. Cera
Michael H. Reed                                              Pamela A. Markert
**KLAFTER OLSEN & LESSER LLP**              Louis A. Kessler
2 International Drive, Suite 350                         **CERA LLP**
Rye Brook, NY 10573                                     595 Market Street, Suite 2300
Telephone: (914) 934-9200                             San Francisco, CA 94105
                                                                      Telephone: (415) 777-2230


                                                                      C. Andrew Dirksen
                                                                      **CERA LLP**
                                                                      800 Boylston St., 16th Floor
                                                                      Boston, MA 02199
                                                                      Telephone: (857) 453-6555

*Settlement Class Counsel*

Daniel Sponseller                                            Eric Christensen
**LAW OFFICE OF DANIEL J.**                  **CAIRNCROSS & HEMPELMANN, PS**
**SPONSELLER**                                          524 Second Ave., Suite 500
409 Broad Street, Suite 200                            Seattle, WA 98104-2323
Sewickley, PA 15143                                     Telephone: (206) 254-4451
Telephone: (412) 741-4422

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2018, I caused a true and correct copy of the foregoing instrument to be served via the Electronic Case Filing (ECF) system in the United States District Court for the Southern District of New York, on all parties registered for CM/ECF in the above captioned matter.

_____

Solomon B. Cera